[No. 12522-0-III. Division Three. May 19, 1994.]

THE STATE OF WASHINGTON, *Appellant*, v. CLARK ALAN MORRIS, *Respondent*.

294

*Donald C. Brockett, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for appellant.

*Brian C. O'Brien, Charles S. Dorn,* and *Brian O'Brien, P.S.,* for respondent.

SWEENEY, A.C.J. — The State appeals dismissal of the first degree theft charge against Clark A. Morris, contending the court erred in concluding that Mr. Morris's right to a speedy disposition pursuant to RCW 9.98.010[1] was violated. We affirm.

---

[1]"(1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and whenever during the continuance of the term of imprisonment there is pending in this state any untried indictment, information or complaint against the prisoner, he *shall be brought to trial within one hundred twenty days after he shall have caused to be delivered to the prosecuting attorney and the superior court* of the county in which the indictment, information or complaint is pending written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: PROVIDED, That for good cause shown in open court, the prisoner or his counsel shall have the right to be present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the board of prison terms and paroles relating to the prisoner.

"(2) The written notice and request for final disposition referred to in subsection (1) hereof shall be given or sent by the prisoner to the superintendent having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting attorney and superior court by registered mail, return receipt requested." (Italics ours.)

## I

On November 21, 1990, Mr. Morris was charged by information in Spokane County with first degree theft. On August 5, 1991, while incarcerated in Walla Walla state penitentiary for unrelated convictions, he filed a written request with the warden for a speedy disposition of the Spokane County charge pursuant to RCW 9.98.010. On August 22, the warden completed the paperwork required by the statute and mailed the documents dated August 5 to the county prosecutor and the Superior Court. They were received on August 23.

On October 22, Mr. Morris was arraigned and his trial date scheduled for December 16. One hundred twenty days from his initial request (August 5) would have been December 3; 120 days from the date of receipt by the prosecutor and the court (August 23) would have been December 21. There is no record of Mr. Morris objecting to the trial date.

On December 10, Mr. Morris moved ex parte for an order shortening time to set a motion for dismissal before the December 16 trial date. The court granted the motion shortening time but denied the motion to dismiss, concluding that the 120-day period commenced as of the postmark date — August 22. On December 16, Mr. Morris moved to stay further proceedings while he sought discretionary review by this court; that motion was granted. At the time, 5 days remained in the 120-day period which followed receipt (by the prosecutor and the Superior Court) of Mr. Morris's request for speedy disposition by the prosecutor. On March 5, 1992, we denied his motion for discretionary review.

On April 7, the State moved to lift the stay and set a trial date. The motion was granted and a trial was scheduled for April 27. The State told the court that April 27 was the "87th day of a 90-day period".[2] Mr. Morris's attorney signed the order, prepared by the State, only after striking "Agreed"

---

[2]Although it is unclear from the record, the "90-day period" probably refers to the speedy trial period of CrR 3.3(c)(1), which is not at issue here. Further, "the 87th day" does not correspond with any significant dates for speedy disposition in this case.

and writing in "Approved as to form". When asked by the court if April 27 was convenient, his attorney replied,

> the "approved as to form" is, I guess, also intended to indicate that the particular statute alleges if 120 days have elapsed, the Court has lost jurisdiction. And I don't want this appearance to be construed as conceding that point for later review.

On April 17, at the pretrial hearing, Mr. Morris moved to dismiss the charge. The court granted the motion to dismiss, concluding that the time for trial ran 5 days after the stay was lifted (April 12). The State's motion to reconsider was denied. This appeal followed.

## II

The question presented is whether delivery to the superintendent of the inmate's written request for speedy disposition under RCW 9.98.010 triggers the start of the 120-day time limitation or whether the request must actually be received by the prosecutor and the superior court before the time period begins.

Both the State and Mr. Morris disagree with the trial court's conclusion that the 120-day period begins with the postmark date (August 22). The State contends that the statute requires receipt by the prosecutor and superior court (receipt theory). Mr. Morris contends the period began to run with the delivery of his request to the warden (delivery theory).

In construing statutes, our paramount duty is to give effect to the Legislature's intent. *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). We attempt to determine what the statute means by ascribing to its words their plain and ordinary meaning. *North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 321, 759 P.2d 405 (1988). The statute here requires that an inmate shall be brought to trial on a pending indictment, information or complaint "within one hundred twenty days after *he shall have caused to be delivered* to the prosecuting attorney and the superior court . . . written notice of the place of his imprisonment and his request for a final disposition . . .". (Italics ours.) RCW 9.98-

.010(1). Giving the words their ordinary meaning: he (the inmate) shall ("[is] obliged to" — *Random House Dictionary of the English Language* 1757-58 (2d ed. 1987)) have caused ("bring about" — *Random House Dictionary*, at 330) to be delivered (carry or turn over to the proper recipient in the future — *Random House Dictionary*, at 528). Paraphrasing to remove the passive voice construction, this phrase becomes: "the inmate is obliged to bring about delivery of the request to the prosecuting attorney and the superior court". The statute then goes on to specify that the "written notice and request . . . *shall be given or sent by the prisoner to the superintendent having custody of him . . .*". (Italics ours.) RCW 9.98.010(2). When the two subsections are read together, the procedural burdens imposed on an inmate are clear. Subsection (1) requires that he cause the written request to be delivered to the prosecutor and the court. Subsection (2) then answers the question of how that is to be accomplished — by giving or sending it to the superintendent. Once this has been accomplished, the inmate has done everything he can to effect the speedy disposition of the charge underlying the detainer. This reading of the statute is in accord with the plain meaning of the statute and also consistent with the purpose for those statutes governing the disposition detainers.

The legislative history of RCW 9.98.010 is nonexistent. But reference to the Washington Interstate Agreement on Detainers (IAD) is both appropriate and helpful. RCW 9.98.010 serves the same purpose for *intra*state detainers as the IAD does for *inter*state detainers. The purpose of both acts is "to encourage the expeditious and orderly disposition of . . . charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." RCW 9.100.010 art. 1. Outstanding charges "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." RCW 9.100.010 art. 1. One of the main purposes of permitting the inmate to demand a speedy trial once a detainer has been lodged is to deter the filing of meritless detainers.

> If a detainer is lodged against a prisoner, that may well affect the quality of his treatment . . .. He may be denied parole or work release, for example. The . . . speedy trial provision is designed to avoid this situation by permitting the prisoner to exonerate himself, if he can, of the charge . . ..

*State v. Barefield*, 110 Wn.2d 728, 733, 756 P.2d 731 (1988).

While the issue has not been squarely addressed in Washington, a number of cases which discuss the speedy trial issue in the context of a detainer appear to adopt the delivery theory urged by Mr. Morris.

> The plain wording of the statute requires that a defendant give written notice of (a) his place of imprisonment and (b) his request for disposition of the information. Under the statute, the 120-day period does not begin to run until the written notice is given.

(Italics omitted.) *State v. Rolax*, 7 Wn. App. 937, 940, 503 P.2d 1093 (1972). "RCW 9.98.010 makes a defendant's formal request for disposition a prerequisite to the commencement of the running of the 120-day time period." *State v. Rising*, 15 Wn. App. 693, 695, 552 P.2d 1056 (1976). "After a detainer is filed, a prisoner may then demand, through the prison warden, that Washington bring the prisoner to trial. Trial must commence within 180 days following the prisoner's demand." *State v. Anderson*, 121 Wn.2d 852, 861, 855 P.2d 671 (1993) (IAD case). Our Supreme Court has noted "[t]he IAD provides that the prisoner must be tried within 180 days of his giving notice to those who have him in custody." *Barefield*, at 731.

In *State v. Angelone*, 67 Wn. App. 555, 561, 837 P.2d 656 (1992), Division Two of this court held that:

> Once the prison officials received such notice, it became their duty to then process his request. Consequently, as of October 30, 1987, the date Angelone sent the memo to his warden, he had properly notified the prison officials of his desire to have the outstanding detainers resolved. He was not arraigned until January 24, 1990, a date which was far beyond 180 days from the date he made his request for speedy trial. Thus, with respect to the charges in counts 1 and 2, Angelone was not afforded a trial within the time specified by statute.

(Citation omitted.)

Our adoption of the delivery theory is contrary to the United States Supreme Court's recent holding in *Fex v. Michigan*, 507 U.S. 43, 122 L. Ed. 2d 406, 113 S. Ct. 1085 (1993). The majority of the Court in *Fex* concluded that the language in the IAD was ambiguous:

> the language will literally bear either interpretation — *i.e.*, that the crucial point is the prisoner's transmittal of his request, or that it is the prosecutor's receipt of the request. One can almost be induced to accept one interpretation or the other on the basis of which words are emphasized: "shall have *caused* to be delivered" versus "shall have caused to be *delivered*."

(Some italics omitted.) *Fex*, 113 S. Ct. at 1089.

■ That Court agrees with the State's position that one cannot be said to have caused something to be delivered unless it is actually delivered. *Fex*, 113 S. Ct. at 1088-89. We disagree and because we are interpreting our own state law, we are free to do so. *Hoffer v. State*, 113 Wn.2d 148, 151, 776 P.2d 963 (1989) (although the Supreme Court's construction of a similarly worded statute is often persuasive, it is not controlling in our interpretation of a state statute). Again, once the inmate delivers his request to the warden, he has done what the statute obligates him to do to cause it to be delivered. We find the dissent in *Fex* more persuasive:

> The focus is on the prisoner's act, and that act is complete when he transmits his request to the warden. That is the last time at which the inmate can be said to have done anything to "have caused to be delivered" the request. Any other reading renders the words "he shall have caused" superfluous.

*Fex*, 113 S. Ct. at 1091 (Blackmun, J., dissenting).

### III

The State argues that Mr. Morris had an affirmative obligation to object to the April 27 trial date and by his failure to object waived the right afforded by RCW 9.98.010. It relies on *Rolax*. Its reliance is misplaced. In *Rolax*, the inmate did not specifically demand a speedy trial nor did he give the written notice required by RCW 9.98.010. *Rolax*, at 939-40.

■ Mr. Morris formally requested an RCW 9.98.010 speedy disposition from the outset. He argued at every opportunity

beginning with the December 10 motion to dismiss that the trial dates set were outside the statutory deadline. His failure to object to the April 27 trial date did not waive his rights.

RCW 9.98.010(1) allows the court to grant "any necessary or reasonable continuance". This provision also requires that the continuance be requested in "open court". The State failed to request a continuance beyond the statutory time limit and the court properly dismissed the charge against Mr. Morris.

Affirmed.

SCHULTHEIS, J., concurs.

MUNSON, J. (dissenting) — I dissent. The language of RCW 9.98, the intrastate procedure for trying untried indictments, informations, and complaints, is the same as the language in RCW 9.100, the uniform agreement on detainers. The reasoning in *Fex v. Michigan*, 507 U.S. 43, 122 L. Ed. 2d 406, 113 S. Ct. 1085, 1091 (1993) concludes

> that the 180-day time period in Article III(a) of the IAD [Interstate Agreement on Detainers] does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.

A plain reading of the statute conveys to me the Legislature's intent that the 120-day period set forth in RCW 9.98.010 cannot commence until the prosecuting attorney and the superior court have notice of the prisoner's request. The requirement that his request pass through the office of the superintendent of the institution is so that an official can confirm

> the term of the commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the board of prison terms and paroles relating to the prisoner.

RCW 9.98.010. This is an administrative function. The superintendent is then required to promptly forward the prisoner's request, together with that certificate, to the

appropriate prosecuting attorney and superior court by registered mail.

Further, the delay in the prosecution of Mr. Morris was brought about by his seeking discretionary review in this court, which was granted. Once he sought that delay and obtained this court's ruling, the time for prosecution should start over. *State v. Bepple*, 14 Wn. App. 491, 542 P.2d 1260 (1975). It is extremely unfair to the court and the prosecuting attorney to say that time prior to the granting of discretionary review counts toward 120 days and, in effect, to leave them 5 days in which to gather their witnesses and make room on the docket to try Mr. Morris. Having caused the delay, he should not benefit from it.

I would reverse.

Review granted at 125 Wn. 2d 1001 (1994).