[No. 61819-4.    En Banc.    April 20, 1995.]

THE STATE OF WASHINGTON, *Petitioner*, v. CLARK ALAN
MORRIS, *Respondent*.

*James R. Sweetser, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for petitioner.

*Brian C. O'Brien* and *Charles S. Dorn & Brian O'Brien, P.S.,* for respondent.

DURHAM, C.J. — At issue is the proper interpretation of Washington's intrastate detainers statute, RCW 9.98. Under RCW 9.98.010, prisoners incarcerated within the state have a right to trial within 120 days on unrelated charges pending within the state. The statute requires this speedy disposition upon a prisoner's request for trial. We must decide at what point the 120-day period commences — when the prisoner transmits a request for trial to the superintendent having custody of the prisoner, or when the prosecutor and superior court actually receive the request for trial.

The Court of Appeals adopted the delivery-to-the-superintendent theory, which resulted in dismissal of a theft charge against the defendant, Clark Morris. *State v. Morris,* 74 Wn. App. 293, 873 P.2d 561 (1994). The United States Supreme Court has adopted the receipt-by-the-prosecutor theory for the Interstate Agreement on Detainers (IAD), which employs language nearly identical to Washington's intrastate statute. *Fex v. Michigan,* 507 U.S. 43, 122 L. Ed. 2d 406, 113 S. Ct. 1085 (1993). Washington is a signatory to the IAD. *See* RCW 9.100.010.

The State urges reversal of the Court of Appeals in order to ensure a uniform measuring event governing the speedy disposition periods for both detainer statutes.[1] We agree, but affirm the dismissal of this case on other grounds.

In November 1990, Clark Morris was charged with first degree theft in Spokane County. In 1991, Morris was incarcerated in the state penitentiary at Walla Walla on unrelated King County charges. On August 5, 1991, Morris filed a request pursuant to RCW 9.98.010 for final disposition of

---

[1]The period is 120 days for the intrastate statute and 180 days for the IAD. RCW 9.98.010(1); RCW 9.100.010 art. 3(a).

the Spokane charge. The request was filed with the prison warden and, pursuant to statute, the request was forwarded to the Spokane prosecutor on August 22 and was received on August 23. Morris was brought to Spokane County Jail on September 25 and arraigned on October 22. A trial was set for December 16.

On December 10, Morris filed a motion to dismiss. Morris argued that the time for trial under the intrastate detainers statute had expired. Under RCW 9.98.010, incarcerated defendants have a right to trial within 120 days. That statute provides that the prisoner "shall be brought to trial within one hundred twenty days after he shall have caused to be delivered to the prosecuting attorney and the superior court" a request for final disposition of pending charges. RCW 9.98.010(1).[2]

Written notice of the place of the prisoner's confinement and a request for final disposition of pending charges "shall be given or sent by the prisoner to the superintendent having custody". RCW9.98.010(2). When this is received, the

---

[2]RCW 9.98.010(1)-(2) provides in full:

"(1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and whenever during the continuance of the term of imprisonment there is pending in this state any untried indictment, information or complaint against the prisoner, he *shall be brought to trial within one hundred twenty days after he shall have caused to be delivered to the prosecuting attorney and the superior court* of the county in which the indictment, information or complaint is pending written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: PROVIDED, That for good cause shown in open court, the prisoner or his counsel shall have the right to be present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the board of prison terms and paroles relating to the prisoner.

"(2) The written notice and request for final disposition referred to in subsection (1) hereof shall be given or sent by the prisoner to the superintendent having custody of him, who shall *promptly* forward it together with the certificate to the appropriate prosecuting attorney and superior court *by registered mail, return receipt requested*." (Italics ours.)

prison is directed to "promptly forward it" to the prosecutor and superior court, together with a certificate containing additional information. RCW 9.98.010(2).

Morris argued to the trial court that the 120-day period commenced when he gave his request to prison officials on August 5. He contended that the period had lapsed, depriving the court of jurisdiction and compelling dismissal with prejudice. *See* RCW 9.98.020. The State claimed the period began to run on August 23, the day it was received by the prosecutor and the superior court. The trial court ruled the period began to run the day the prison mailed the notice to the State, August 22. The court, therefore, found Morris's scheduled trial date to be within the 120-day period, and denied the motion to dismiss.

Morris sought discretionary review in the Court of Appeals, and the trial court entered a stay of proceedings. The Court of Appeals denied review, and the decision became final on March 15, 1992.

On April 7, 1992, the State moved to lift the stay of proceedings. The trial court granted the motion and set trial for April 27. The court set the trial date in reliance on the State's assurance that April 27 was "the 87th day of a 90-day [criminal rules' speedy trial] period." Report of Proceedings, at 32.[3] Although Morris's counsel signed the new trial date order, he reiterated his position that, if the 120-day period had run, the trial court had no jurisdiction over Morris.

On April 17, Morris brought yet another motion to dismiss. He argued that even if the period of the stay (December 16 to April 7) were excluded, the 120-day period expired on April 12, 1992. The State's memorandum in response to the motion agreed: "The 120 days since defendant's request for final disposition expired while the defendant was seeking discretionary review of the [initial] denial of the Motion

---

[3]As the Court of Appeals noted, "Although it is unclear from the record, the '90-day period' probably refers to the speedy trial period of CrR 3.3(c)(1), which is not at issue here. Further, 'the 87th day' does not correspond with any significant dates for speedy disposition in this case." *State v. Morris*, 74 Wn. App. 293, 295 n.2, 873 P.2d 561 (1994).

to Dismiss." Clerk's Papers, at 47. The State apparently meant that Morris's request for discretionary review constituted a waiver of the 120-day period. The trial court concluded it had lost jurisdiction, and dismissed the case. The Court of Appeals affirmed the dismissal, although on other grounds. Taking the position that the 120-day period commences when the prisoner delivers the request for trial to prison officials, the Court of Appeals found that Morris's right to a speedy disposition pursuant to RCW 9.98.010 was violated. *State v. Morris*, 74 Wn. App. 293, 873 P.2d 561 (1994). We granted the State's petition for review.

## ANALYSIS

We will first decide whether the 120-day time-for-trial period under RCW 9.98.010 commences upon transmittal of a request for trial by the prisoner to prison authorities or upon actual receipt of the request by the prosecutor and superior court.

The statute directly at issue is Washington's intrastate detainers act. RCW 9.98. This statute gives prisoners within Washington the right to request trial on "any untried indictment, information or complaint" within 120 days of the request. RCW 9.98.010(1). The IAD is an interstate compact with parallel language which applies to prisoners who have untried charges lodged against them by other states or the federal government. *See* RCW 9.100 (codifying the IAD).

Both statutes set up a 2-stage process. First, a prisoner makes a request for speedy and final disposition of untried charges. This request "shall be given or sent by the prisoner to the superintendent having custody of him". RCW 9.98.010(2) (intrastate procedure). *See* RCW 9.100.010 art. 3(b) (IAD procedure). Second, the superintendent forwards the request (together with a certificate stating the term of confinement, the time remaining to be served, and other details) to the appropriate prosecuting attorney and superior court. RCW 9.98.010(2). *See* RCW 9.100.010 art. 3(b). If the case is not brought to trial within 120 days,

no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

RCW 9.98.020.

The intrastate statute dictates that a prisoner "shall be brought to trial within one hundred twenty days *after he shall have caused to be delivered* to the prosecuting attorney and the superior court" a written request for a speedy disposition of any untried indictment, information, or complaint. (Italics ours.) RCW 9.98.010(1). The IAD has nearly identical language. RCW 9.100.010 art. 3(a) (using same language except that period is 180 days, and request is delivered to "the prosecuting officer and the appropriate court" rather than "the prosecuting attorney and the superior court").

The United States Supreme Court recently considered the question of when the IAD's 180-day period commences. *Fex v. Michigan*, 507 U.S. 43, 122 L. Ed. 2d 406, 113 S. Ct. 1085 (1993). The Court conceded the statutory language supports either the theory that the period commences with delivery of the request by the prisoner to the warden or the theory that it begins only with the actual receipt of the request by the prosecutor and court.

> [I]t must be acknowledged that the language will literally *bear* either interpretation — *i.e.*, that the crucial point is the prisoner's transmittal of his request, or that it is the prosecutor's receipt of the request. One can almost be induced to accept one interpretation or the other on the basis of which words are emphasized: "shall have *caused* to be delivered" *versus* "shall have caused to be *delivered*."

*Fex*, 113 S. Ct. at 1089. Nevertheless, the Court examined textual and contextual clues and concluded that the period for trial "does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer". *Fex*, 507 U.S. at 52. The Court noted that actual delivery is a determinate event, whereas when the prisoner "caused" the request to be delivered is less easily determined. *Fex*, 507 U.S. at 49-51.

Moreover, the statute provides for verification of when actual delivery takes place. Both the IAD and the intrastate detainers statute require the warden to forward the prisoner's request and accompanying documents by registered mail, return receipt requested. RCW 9.98.010(2); RCW 9.100.010 art. 3(b); *Fex*, 507 U.S. at 51. In contrast, there is no provision for verifying when the prisoner "caused" the request to be delivered to the warden. Instead, the statutes leave open two possible modes of delivery to the warden. The statutes specify that the request "shall be *given or sent* by the prisoner" to the warden or superintendent. (Italics ours.) RCW 9.98.010(2); RCW 9.100.010 art. 3(b). The United States Supreme Court concluded that the context supports the theory that the period commences with actual receipt by the prosecutor and court rather than with delivery to the warden.

> The IAD thus provides for documentary evidence of the date on which the request is delivered to the officials of the receiving State, but requires no record of the date on which it is transmitted to the warden (assuming that is to be considered the act of "causing"). That would be peculiar if the latter rather than the former were the critical date.

*Fex*, 507 U.S. at 51.

The Court of Appeals found Justice Blackmun's dissent in *Fex* more persuasive than the majority opinion. *Morris*, at 299. *See Fex*, 113 S. Ct. at 1091-94 (Blackmun, J., dissenting). In adopting the dissent's position, the Court of Appeals stressed that the analysis in *Fex* of the IAD is persuasive but not controlling authority for the interpretation of the similarly worded Washington intrastate detainers statute. *Morris*, at 299. *See also Hoffer v. State*, 113 Wn.2d 148, 151, 776 P.2d 963 (1989) (it is well settled that the Supreme Court's construction of a similarly worded federal statute, although often persuasive, does not control this court's interpretation of a state statute). The court reasoned that its reading of the statute accorded with the plain meaning of the words and furthered the purpose of the statute. *Morris*, at 297. The court agreed with the dissent in *Fex* that the

focus of the relevant language is on the prisoner's act, which is complete when he transmits his request to the warden. *Morris*, at 297.

Regardless of how convincing one finds the *Fex* majority, its interpretation now governs the IAD for prisoners subject to the IAD in this state.[4] Prisoners subject to the IAD exist side by side in our state's prisons with prisoners subject to the Washington intrastate detainers statute. As the State argues, it is unnecessarily confusing to create two different sets of rules governing the commencement of speedy disposition periods for prisoners in the same system.

■ Consistency seems more desirable here than confusion. There is no utility in creating a potentially confusing situation in which identical statutory language is read two different ways to create two different means of measuring the commencement of the speedy disposition period. Furthermore, a precise measuring event is more desirable than an unverifiable or indeterminate one. Of the two different interpretations, the *Fex* majority adopts the more verifiable and easily ascertained measuring event. Accordingly, we hold that actual receipt by the prosecuting attorney and superior court of the county in which the indictment, information, or complaint is pending commences the 120-day period.

Morris argues that making actual receipt the measuring event creates not one but two triggers, since the statute requires delivery to both the prosecuting attorney and the superior court of the county where the charge is pending. RCW 9.98.010(1)-(2). *Fex* does not address the parallel ambiguity in the IAD, perhaps because Fex's request was received by the prosecutor and the appropriate court on the

---

[4]As this court has stated, "interpretation of the IAD is a matter of federal law". *State v. Barefield*, 110 Wn.2d 728, 732 n.2, 756 P.2d 731 (1988) (citing *Cuyler v. Adams*, 449 U.S. 433, 438-40, 66 L. Ed. 2d 641, 101 S. Ct. 703 (1981)). We note that one comment in *Barefield* is contrary to the rule later adopted in *Fex*. *Barefield*, at 731 ("The IAD provides that the prisoner must be tried within 180 days of his *giving notice* to those who have him in custody." (Italics ours.)).

same day. *Fex*, 507 U.S. at 46. Similarly, the parties here have stipulated that the court and the prosecutor received notice on the same day.[5]

It appears, however, that the answer to this ambiguity can be found in "the sense of the matter, and in the import of related provisions". *Fex*, 507 U.S. at 49. The whole thrust of the statute is to ensure that once the period properly commences, the prisoner "shall be brought to trial" within 120 days. RCW 9.98.010(1). Our system assigns to the prosecutor, not the court, the responsibility of ensuring that defendants are timely brought to trial. *See generally* U.S. Const. amend. 6 ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial"); RCW 9.98.020 ("[i]n the event the action is not brought to trial within the period of time as herein provided, no court of this state shall any longer have jurisdiction thereof"). It is appropriate, therefore, that in the event the prosecutor and the superior court receive notice on different days, the prosecutor's actual receipt of the request commences the 120-day period.

The State seeks guidance on what it perceives to be a further problem. Morris initiated an interlocutory appeal of the trial court's denial of his initial motion to dismiss. The trial court's decision was stayed pending appeal. The Court of Appeals denied review on March 15, 1992, and the State moved to lift the stay of proceedings.

■ The State argues that when a defendant delays the speedy disposition date by seeking appellate review, the 120-day period should start over at the termination of review. This is not convincing. Any complications caused by discretionary or interlocutory review in this kind of setting can be resolved in the trial court's discretion. The intrastate detainers statute specifically allows for "any necessary or reasonable continuance" of the 120-day period "for good cause shown". RCW 9.98.010(1).

---

[5]See Answer to Pet. for Review, at 4 n.2. The exact date the superior court received notice is not clearly evident from the record.

Although the trial court granted a stay pending the initial discretionary appeal to the Court of Appeals, neither the trial court nor the State referred to RCW 9.98.010(1). Even if that stay is treated as a continuance allowed under the statute, the continuance was lifted by the court on April 7, and the 120-day period lapsed. At that point, the State still could have requested an additional "reasonable and necessary" length of time in which to prepare for trial, but did not.

In any event, Morris still has not been tried on the pending charge, more than 3 years after his request for speedy disposition. The resulting delay is more than nine times the length of the 120-day statutory period. Under the circumstances, we dismiss the theft charge with prejudice.

UTTER, DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and TALMADGE, JJ., concur.