[Nos. 23883-1-III; 23884-9-III. Division Three. July 20, 2006.]

THE STATE OF WASHINGTON, *Appellant*, v. LENA MARIE BISHOP, *Respondent*.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for appellant.

*Cece L. Glenn*, for respondent.

¶1 SCHULTHEIS, J. — Under article III(a) of the interstate agreement on detainers (IAD), chapter 9.100 RCW, a person who is serving a term of imprisonment in another state and who is facing charges in Washington is entitled to trial in Washington within 180 days after Washington receives that person's request for final disposition of the charges. RCW 9.100.010, art. III(a). Otherwise, under article IV of the IAD, when Washington lodges a detainer against a prisoner in another state, the time for trial commences within 120 days after the prisoner has been transported to Washington. RCW 9.100.010, art. IV(c).

¶2 Lena M. Bishop was sentenced to an indeterminate three-year term in California. She began serving her sentence in a penal drug rehabilitation institution from which she could have been released after 18 months. When Washington filed a detainer with California for drug charges pending here, she lost eligibility for the drug treatment program. While awaiting resentencing, Ms.

Bishop filed a demand under the IAD for Washington to proceed on the charges.

¶3 The questions presented are (a) whether she was "serving a term of imprisonment" while between rehabilitation and prison and, if so, (b) whether she was prejudiced by Washington's failure to bring her to trial within 180 days of her demand. We conclude that Ms. Bishop properly demanded resolution of the Washington charges under the IAD and affirm the trial court's dismissal of those charges.

FACTS

¶4 On June 15, 2003 in Glenn County, California, Ms. Bishop was sentenced for a drug offense to an indeterminate three-year term in the state prison. She was committed to the California Rehabilitation Center (CRC) at Norco, California. If she successfully completed the drug treatment program at the CRC, she was to be released after 18 months.

¶5 On July 18, 2003, the State of Washington filed an information charging Ms. Bishop with two counts of delivery of heroin. A warrant issued the same day. Three months later, Washington filed a second information—for possession of heroin with intent to deliver—and a warrant issued.

¶6 In mid-October 2003, Washington sent the two arrest warrants to the CRC in California. As a result, Ms. Bishop was disqualified from the CRC drug rehabilitation program. While still resident at CRC and awaiting resentencing, Ms. Bishop filed IAD article III demands for trial on the Washington charges. These documents were received in Spokane County on January 20, 2004. California resentenced Ms. Bishop to three years, to expire on March 17, 2005.

¶7 On March 29, 2004, Washington wrote to the California warden requesting IAD transfer under article IV. Ms. Bishop was finally transported from California to Washington on August 3, 2004, and the warrants were served on her

in Spokane on August 12. Her preliminary appearance was held the next day, and she was arraigned on August 24.

¶8  In January 2005, Ms. Bishop filed a motion to dismiss the Washington charges for violation of the time for trial requirements of the IAD under article III. The State responded that it had initiated the detainer process under article IV and had met the time to trial requirements under that article of the IAD. A hearing was held in the Spokane superior court later that month. Finding that IAD article III, not article IV, applied and that the 180-day limitation period precluded the State from proceeding, the trial court dismissed the prosecutions.

¶9  The State appeals dismissal of both proceedings.

### TIME TO TRIAL PERIOD UNDER THE IAD

¶10  The IAD is a congressionally sanctioned interstate compact designed to encourage the expeditious and orderly disposition of criminal charges in the party states. RCW 9.100.010, art. I; *Carchman v. Nash*, 473 U.S. 716, 719, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985). Washington State codified the IAD in 1967 at chapter 9.100 RCW. Article III of the IAD provides that if a person has "entered upon a term of imprisonment" in a penal or correctional institution and if untried charges are pending in another state and that other state has lodged a detainer against the prisoner, then the prisoner "shall be brought to trial within one hundred eighty days" after she has caused to be delivered to the prosecution or the court in the other state written notice of her place of imprisonment and a written request for final disposition of the charges. RCW 9.100.010, art. III(a).

¶11  The trial court here concluded that Ms. Bishop was serving a term of imprisonment in California when Washington lodged detainers against her and when she delivered written notice to the Washington prosecutor of her request for final disposition under article III of the IAD. On appeal, Washington contends Ms. Bishop was not serving a sen-

tence when she instituted her IAD request but was merely awaiting resentencing after her drug rehabilitation program was revoked. Our resolution of this issue involves interpretation of the language of the IAD, especially as it relates to the purpose of the statute.

■ ■ ¶12 Our objective in construing a statute is to implement legislative intent. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). A statute's plain meaning is considered an expression of that intent. *Id.* Article III states that a request for final disposition may be made by a person who "has entered upon a term of imprisonment in a penal or correctional institution of a party state." RCW 9.100.010, art. III(a). Here, the record shows that Ms. Bishop had been tried and sentenced in June 2003 to an indeterminate term of three years for a drug offense. She was ordered to serve that sentence at the CRC, a secure facility within the California prison system that provides drug rehabilitation treatment. While she served this term of imprisonment, Washington sent two warrants to the warden at the CRC relating to the Washington charges.[1] As a result of these warrants, California withdrew Ms. Bishop's eligibility for the CRC program.

■ ■ ¶13 Washington contends withdrawal of Ms. Bishop's eligibility for CRC is analogous to the revocation of parole. Citing *United States v. Dobson*, 585 F.2d 55, 58-59 (3d Cir. 1978), Washington asserts that just as an arrestee awaiting a parole revocation hearing is not serving a "term of imprisonment" for the purposes of the IAD, Ms. Bishop was not serving a term of imprisonment while she waited for resentencing. Contrary to Washington's assertion, the record shows that Ms. Bishop instituted her IAD request while she was still incarcerated at CRC. Moreover, she had never been released from her term of imprisonment (as is the case with a parolee) while she served her sentence at the CRC. It appears from the record that the CRC program is a sentencing alternative that is no less secure than

---

[1] Washington does not challenge the trial court's conclusion that these warrants satisfied the requirement of formal detainers under the IAD.

typical state imprisonment. Removal of Ms. Bishop from eligibility for the CRC program did not remove her from her original sentence, which was an indeterminate term of three years. Accordingly, she was still under her term of imprisonment when she requested disposition of the Washington charges pursuant to article III of the IAD.

¶14 This conclusion is supported by an examination of the purposes of the IAD. As explained in *State v. Barefield*, 110 Wn.2d 728, 733, 756 P.2d 731 (1988):

> [O]ne of the main purposes of the IAD is to deter the filing of meritless detainers. If a detainer is lodged against a prisoner, that may well affect the quality of his treatment in the receiving state. He may be denied parole or work release, for example. The IAD's speedy trial provision is designed to avoid this situation by permitting the prisoner to exonerate himself, if he can, of the charge in the receiving state.

(Footnote omitted.) Ms. Bishop was a prisoner in California, not a pretrial detainee or a prerevocation-of-parole detainee. The filing of the Washington detainers caused her to be denied the rehabilitation offered in the California prison system. Clearly the lodging of the detainers affected the quality of her treatment in the receiving state. By the plain terms of the IAD as codified in RCW 9.100.010, article III, she was entitled to request speedy disposition of the Washington charges.

PREJUDICE

██ ¶15 Washington next contends Ms. Bishop failed to prove prejudice. The Washington Supreme Court in *State v. Barefield*, 110 Wn.2d 728, 735, 756 P.2d 731 (1988), stated in dicta that an IAD speedy trial violation requires dismissal only upon a showing of prejudice or bad faith. As noted in *State v. Morris*, 126 Wn.2d 306, 313 n.4, 892 P.2d 734 (1995), however, the interpretation of the IAD is a matter of federal law and is subject to federal construction. *See also Carchman*, 473 U.S. at 719. *Carchman*, in discussing the step-by-step procedure of article III of the IAD, explains that "[t]he

authorities in the receiving State then must bring the prisoner to trial within 180 days, absent good cause shown, or the court must dismiss the indictment, information, or complaint with prejudice, and the detainer will cease to be of any force or effect."[2] *Id.* at 721. The mandatory language of article III supports *Carchman*'s recognition that a defendant does not have to establish prejudice for dismissal of charges under the IAD.

¶16 Even if prejudice were required, the trial court's finding of prejudice here is supported by the record. Although Washington contends Ms. Bishop's ineligibility for the CRC program cannot be considered the result of Washington's failure to comply with the speedy trial provision of the IAD, it is clear that this is exactly the consequence the IAD is designed to forestall. As indicated above, the IAD seeks to avoid delays in bringing matters to trial because such delays may prevent prisoners from receiving the benefits of rehabilitative programs, work release, or concurrent sentences. *See Carchman*, 473 U.S. at 720 (quoting COUNCIL OF STATE GOVERNMENTS, SUGGESTED STATE LEGISLATION, PROGRAM FOR 1957, at 74 (1956), which asserts that an inmate with a detainer against him must be kept in close custody, barring him from treatment, training, and other opportunities).

¶17 Ms. Bishop lost her eligibility for the drug rehabilitation program because Washington filed detainers against her. She was entitled to speedy disposition of the Washington charges so as to possibly requalify for the CRC program or to obtain a concurrent sentence. The trial court did not err in dismissing the Washington charges.

¶18 Affirmed.

SWEENEY, C.J., and KATO, J., concur.

Review denied at 159 Wn.2d 1023 (2007).

---

[2] The term "good cause shown" relates to the provision in article III that allows the court to grant necessary or reasonable continuances in open court "for good cause shown." RCW 9.100.010, art. III(a).