

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-13-00107-CR

---

THE STATE OF TEXAS, Appellant

V.

EARL SCOTT CHESNUT, Appellee

---

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 1021766

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

Earl Scott Chesnut was in a federal prison in Oregon when he was, first, indicted[1] in Hopkins County, Texas, for theft of a firearm and, then, made the subject of a Texas-issued detainer served on officials in Oregon. In response, Chesnut applied for the final disposition of the Hopkins County indictment pursuant to the terms of the Interstate Agreement on Detainers Act (IADA), which both Texas and Oregon have adopted. *See* TEX. CODE CRIM. PROC. ANN. art. 51.14 (West 2006). When Chesnut was not brought to trial by the State of Texas within 180 days, as required by the IADA, Chesnut asked for, and was granted by the Hopkins County trial court, dismissal of the Hopkins County indictment. Because (1) Chesnut complied with his obligations under the IADA, and (2) the State failed to try Chesnut by the expiration of the IADA deadline, we affirm the trial court's dismissal of Chesnut's indictment.

On February 8, 2013, Chesnut was released from prison in Oregon, but was soon apprehended by Oregon law enforcement officers and extradited to Texas, where the State sought to prosecute him on the untried 2010 Hopkins County indictment. Because he was not brought to trial within 180 days after receipt by the State of Texas of his request for final disposition, as required by the IADA, Chesnut asked for dismissal of the indictment. At an evidentiary hearing, the State admitted receipt of Chesnut's request for final disposition, failed to request a continuance, and did not present any argument of good cause. The trial court dismissed the indictment. On appeal, the State argues that Chesnut was not entitled to the dismissal because the warden of the Oregon prison failed to ensure that the request for final disposition

---

[1] A Hopkins County Grand Jury indicted Chesnut July 27, 2010.

was received by the court.[2]  Appropriately, the State admits that the warden's mistake is no fault of Chesnut's.

The IADA is a congressionally sanctioned compact between the United States and the states that have adopted it, including Texas and Oregon.  *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001) (citing 18 U.S.C. app. § 2 (West, Westlaw current through 2014)); *In re Dacus*, 337 S.W.3d 501, 503 (Tex. App.—Fort Worth 2011, orig. proceeding.); OR. REV. STAT. § 135.775 (West 2013).  It "outlines the cooperative procedure between the states to be used when one state is seeking to try a prisoner who is currently imprisoned in a penal or correctional institution of another state."  *State v. Votta*, 299 S.W.3d 130, 134–35 (Tex. Crim. App. 2009).

On July 2, 2012, the Federal Bureau of Prisons (Bureau) confirmed with the Hopkins County Sheriff's Office that a detainer had been filed against Chesnut on the untried indictment.[3]  The warden of the Oregon prison in which Chesnut was confined notified him of the detainers, prompting him to file a standardized form requesting final disposition of the Texas indictment and waiving extradition in compliance with the IADA.  Chesnut explained to the trial court at the hearing that he had completed the required paperwork and turned it over to the warden of the Oregon prison.  The warden was then required to notify all appropriate officials involved in the request, including the prosecuting attorneys and the trial court in Hopkins County.  TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(d).

---

[2]The State also appeals the dismissal of indictments for aggravated assault with a deadly weapon and unauthorized use of a vehicle in our cause numbers 06-13-00108-CR and 06-13-00109-CR.

[3]The letter also stated, "Release is tentatively scheduled for 01-15-2013, however we will again notify you approximately 60 days prior to actual release."

On July 31, 2012, the warden sent a notice on Bureau letterhead to Hopkins County's former District Attorney, Frank Long, at his Sulphur Springs address. The notice was sent via certified mail and included the trial court's cause number on Chesnut's pending Hopkins County case. It is undisputed that the Hopkins County District Attorney received the notice August 6. The notice (1) stated that Chesnut was incarcerated in Sheridan, Oregon, (2) indicated that Chesnut had requested final disposition of all untried indictments in the State of Texas and included a copy of this request, (3) enclosed a Certificate of Inmate Status as required by Article III(a) of the IADA, and (4) warned that failure to take action would "result in the invalidation of the indictments, informations or complaints."[4] The notice also indicated that a carbon copy had been sent to the "Clerk of Court" and the "State IADA Administrator." The carbon copy was incorrectly addressed to the County Court Clerk of Hopkins County, instead of the District Clerk, and was inadvertently mailed to Long's address. The notice was not forwarded to or received by the trial court in which the untried indictment was pending.[5]

---

[4]The letter also informed Long of the actions required under Articles II, VI, and VII to secure Chesnut's transfer. The fact that all required documentation under the IADA was included is uncontested.

[5]The envelope addressed to "Hopkins County, Clerk of Court" included the handwritten notation "Deb." The trial court stated,

> Even that label would have been -- had it gotten to a clerk of a court here in Hopkins County -- I suspect if it had, as it appears to be addressed, gotten to Debbie Shirley, our County Clerk as opposed to the District Clerk, Debbie would have taken a look at that and ultimately determined, maybe through some phone calls, Patricia Dorner, our District Clerk, is the one that needs to have that. She would have forwarded that on.

The State sought permission from the court to present additional evidence, then later withdrew its request. In its ruling dismissing the indictments against Chesnut, the trial court stated, "It is true that the Court never received its copy. . . [since] . . . the Court's copy was actually in the possession of the district attorney." Chesnut argues, "[T]he letter to the court was in [the district attorney's] file with the envelope clearly labeled to the 'Clerk of the Court.' It was signed for. So it was delivered."

4

Hearing nothing from Long or any other Hopkins County official, the Bureau sent another letter on November 6, 2012, warning,

> The above-named subject made application for final disposition of pending charges pursuant to the Interstate Agreement on Detainers Act (IADA) which application was received in your office on August 6, 2012.

> As you are aware, under Article III of the IADA, Mr. Chesnut is to be brought to trial on these charges within 180 days from the date the forms were received in your office as noted on the certified mail receipt. It appears that Mr. Chesnut has not been brought to trial on the charges specified in your detainer and the 180 day time period will lapse on February 1, 2013.

After the 180-day deadline expired,[6] Chesnut was released, apprehended in Oregon, and brought to Hopkins County pursuant to the detainer.[7] His counsel moved to dismiss the State's untried indictment pursuant to the IADA. After hearing arguments, in which the State admitted receipt of the request, the trial court dismissed the indictment.

*(1)      Chesnut Complied with His Obligations under the IADA*

We review de novo the question of whether Chesnut complied with the requirements of the IADA. *Walker v. State*, 201 S.W.3d 841, 845 (Tex. App.—Waco 2006, pet. ref'd) (citing

---

[6]On January 31, 2013, Hopkins County Assistant District Attorney Peter Morgan applied for

> the requisition and return to this State of Earl Scott Chestnut [sic], . . . who stands charged by the accompanying certified copies of the Indictment[s] now pending in the Judicial Court of Hopkins, County, Texas, with the crime of Aggravated Assault With a Deadly Weapon, in violation of 22.02(a)(2) of the Texas [Penal] Code, Unauthorized Use of a Vehicle, in violation of 31.07 of the Texas [Penal] Code, and Theft of a Firearm, in violation of 31.03(e)(4)(C) of the Texas [Penal] Code.

The application averred, "The ends of justice . . . require that [Chesnut] be brought back to this State for trial." The trial court received this request along with the "necessary papers requesting the issuance of a requisition upon the Governor of Oregon for the rendition of Earl Scott Chestnut [sic]."

[7]On November 28, 2012, the Bureau notified the Hopkins County Sheriff's Office of Chesnut's amended release date of February 8, 2013, and instructed Hopkins County to make arrangements to retrieve him.

5

*State v. Miles*, 101 S.W.3d 180, 183 (Tex. App.—Dallas 2003, no pet); *Lindley v. State*, 33 S.W.3d 926, 930 (Tex. App.—Amarillo 2000, pet. ref'd); *State v. Sephus*, 32 S.W.3d 369, 372 (Tex. App.—Waco 2000, pet. ref'd)). However, factual findings underlying the issue of IADA compliance are reviewed under the highly deferential clearly-erroneous standard. *Id.*; *see Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012) (discussing clearly-erroneous standard in *Batson*[8] context).

The trial court's order dismissing the indictments against Chesnut relied on the following language form *Walker*, an opinion of our sister court in Waco:

> The prisoner bears the burden of demonstrating compliance with the procedural requirements of article III. The prisoner may comply by either: (1) delivering his IAD[A] transfer request to the warden where he is imprisoned to be forwarded to the court and prosecuting attorney of the state which lodged the detainer against him; or (2) delivering his transfer request directly to the court and prosecuting attorney of that state.
>
> If the prisoner delivers the transfer request to the warden where he is incarcerated for forwarding, then the prisoner's "only obligation [i]s to show that he notified the appropriate [prison] officials of his desire to [be transferred]." Conversely, if the prisoner decides to deliver his transfer request directly to the court and prosecuting attorney of the other state, he is personally responsible to see that the notice is sent by registered or certified mail, return receipt requested, to those authorities.

201 S.W.3d at 846 (citations omitted) (alteration in original).

In *Walker*, our sister court found that the prisoner had properly notified the warden of his request for final disposition and that his obligation under the IADA had been satisfied. *Id.* This is based on the concept applied by several courts that "[s]trict compliance with Article III may not be required when the prisoner has done everything possible, and it is the custodial state that

---

[8]*Batson v. Kentucky*, 476 U.S. 79 (1986).

is responsible for the default." *Casper v. Ryan*, 822 F.2d 1283, 1293 (3rd Cir. 1987), *cert. denied*, 484 U.S. 1012 (1988); *see Norton v. Parke*, 892 F.2d 476, 481 (6th Cir. 1989), *cert. denied*, 494 U.S. 1060 (1990).[9]

The trial court found, and it is uncontested, that Chesnut delivered his IADA request to the warden in proper form. Thus, under the reasoning of *Walker*, Chesnut met his only obligation under Article III of the statute. *See Walker*, 201 S.W.3d at 846.

*(2)     The State Failed To Try Chesnut by the Expiration of the IADA Deadline*

Chesnut's compliance under the statute, however, does not end the inquiry of whether he was entitled to the dismissal; the statute requires that he be brought to trial "within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of . . . his request for a final disposition." TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a).

Because the court had not received the notice, the State suggests that the trial court's reliance on *Walker* was misplaced. The State argues that the court should have instead focused on the United State Supreme Court's decision in *Fex v. Michigan*, which stated, "[T]he 180–day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex v. Michigan*, 507 U.S. 43, 52 (1993). Yet, the issue in *Fex* was whether the 180-day time period should commence from the date of receipt of the request by the state in which the untried indictment was pending or the

---

[9]These nonbinding federal court decisions are cited for their persuasive reasoning.

7

date on which the request was communicated by the prisoner to prison authorities in the state in which the prisoner was then incarcerated.

*Fex* did not decide the issue before us. In that case, prison authorities properly mailed the request for final disposition, and it was received by both the prosecutor and the court where the cases were pending. Thus, *Fex* did not answer the question of whether there are two triggers for the 180-day time period, one trigger when the prosecuting office receives the request and another when the court receives it.[10] As pointed out the by Supreme Court of Washington, "*Fex* does not address the parallel ambiguity in the IAD, perhaps because Fex's request was received by the prosecutor and the appropriate court on the same day." *State v. Morris*, 892 P.2d 734, 738 (Wash. 1995).

Also, in *Fex*, the Supreme Court stated, "[T]he receiving State's receipt of the request starts the clock." *Fex*, 507 U.S. at 51. "Our system assigns to the prosecutor, not the court, the responsibility of ensuring that defendants are timely brought to trial." *Morris*, 892 P.2d at 738. Here, it is undisputed that the State received notice. "It is appropriate . . . that in the event the prosecutor and the . . . court receive notice on different days, the prosecutor's actual receipt of the request commences the [180]-day period." *Id.*

We agree. Adopting such an interpretation is consistent with the IADA's liberal construction mandate, which is designed to effectuate the purpose of "expeditious and orderly disposition of . . . charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." TEX. CODE CRIM. PROC. ANN. art. 51.14,

---

[10]The court received the IADA-compliant request when it was admitted into evidence.

art. I. This interpretation also encourages the cooperation anticipated by the Texas Legislature when it adopted Article IX of the IADA, which reads, in pertinent part, "All courts, departments, agencies, officers, and employees of this state and its political subdivisions are hereby directed to enforce this article and to cooperate with one another and with other party states in enforcing the agreement and effectuating its purpose." TEX. CODE CRIM. PROC. ANN. art. 51.14, art. IX(c).

We hold that, when (1) a prisoner complies with his or her obligations under the IADA, and (2) the prosecuting office actually receives notice of that prisoner's proper request for final disposition along with all the required documentation, the 180-day period for bringing the prisoner to trial commences on the date of receipt by the prosecuting office. Here, because Chesnut was not tried in Texas before the expiration of the 180-day deadline, the trial court properly dismissed the indictment against him. We overrule the State's single point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:        January 23, 2014
Date Decided:          February 12, 2014

Publish

9