Joe Lee **WRIGHT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

*and*

Joe Lee **WRIGHT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Nos. 95–CA–2220–MR, 95–CA–3291–MR.

Court of Appeals of Kentucky.

May 9, 1997.

Discretionary Review Denied by Supreme Court Oct. 23, 1997.

Gene Lewter, Lexington, for Appellant.

Chris Gorman, Attorney General, Perry T. Ryan, Assistant Attorney General, Frankfort, for Appellee.

Before COMBS, EMBERTON and GUDGEL, JJ.

## OPINION

COMBS, JUDGE.

The appellant, Joe Lee Wright, appeals from two separate judgments of the Fayette Circuit Court. The appellant first appeals from the court's judgment of January 20, 1995, which revoked his probation and sentenced him to seven years' imprisonment. (Case # 95–CA–2220). The appellant's second appeal arises from his motion to vacate the court's judgment of November 17, 1995, which was entered pursuant to his conditional plea of guilty to escape in the second degree and perjury in the first degree. (Case # 95–CA–3261). As the issues presented in both appeals turn upon the correct interpretation and application of the Interstate Agreement on Detainers, KRS 440.450, we will address both appeals in one opinion.

On April 30, 1993, under the alias of "James Cunningham", the appellant pled guilty to trafficking in a controlled substance in the first degree and was sentenced to seven years' imprisonment by the Fayette Circuit Court. That sentence was probated to five years on the condition that appellant serve 6 months in the Fayette County Detention Center. In July, 1993, while on work release, the appellant escaped from the Fayette County Detention Center; a warrant was issued for his arrest for escape in the second degree. In February, 1994, the prosecutor's officer in Montgomery County, Ohio, notified the Commonwealth Attorney's Office in Fayette County that the appellant had been arrested in Ohio. Additionally, the Commonwealth learned that the appellant's true identity was Joe Lee Wright.

On April 5, 1994, in accordance with the IAD, the Commonwealth filed a request for custody of the appellant for the escape charge with the warden of the Ohio correctional facility where he was serving a sentence in that state. On April 21, 1994, the appellant was notified by the prison warden of two other outstanding indictments against him for bail jumping and trafficking in a controlled substance in Fayette County, Kentucky. Upon notification of the pending charges, the appellant filed a request pursuant to the IAD for disposition of the charges. At this point in the case, the record is somewhat unclear as to the next series of events that occurred. It appears that the appellant's IAD request was forwarded to the Commonwealth Attorney's Office in *Hardin County*, Kentucky; the Commonwealth Attorney's Office in Fayette County *never received* the appellant's request for disposition. The charges of trafficking in a controlled substance and bail jumping were actually pending in Hardin County rather than in Fayette County as had been mistakenly reported to the Ohio prison warden by the notice of April 21, 1994. This coincidence may explain why the appellant's IAD request

was forwarded to Hardin County rather than to Fayette County. The Commonwealth Attorney's Office in Fayette County first learned of the appellant's request when it was introduced into evidence on April 17, 1995, in support of the appellant's motion to dismiss.

On September 20, 1994, the Commonwealth Attorney's Office in Hardin County, Kentucky, requested custody of the appellant. In October, 1994, the appellant was returned to Hardin County, Kentucky, to dispose of the pending charges against him and, on January 10, 1995, the Hardin Circuit Court dismissed the charges against the appellant for failure of compliance with the IAD.[1]

The appellant was returned to Fayette County in January, 1995; and on January 20, 1995, the court revoked the appellant's probation for escape from the Fayette County Detentional Center and imposed a sentence of seven years' imprisonment. The appellant filed various motions to vacate the judgment and to be released from custody. On June 6, 1995, the appellant filed a *pro se* motion to vacate the January, 1995, judgment, alleging ineffective assistance of counsel. Although the motion was not specifically styled as a motion pursuant to RCr. 11.42, it was treated as such by the trial court. On August 8, 1995, the court denied the appellant's motion. The appeal in case # 95-CA-2220 followed.

On February 3, 1995, the Fayette County Grand Jury indicted the appellant for escape in the second degree, perjury in the first degree, and persistent felony offender in the first degree. In March, 1995, the appellant filed a motion to dismiss the charges on grounds that the Commonwealth had failed to bring him to trial within the 180-day time period set forth in the IAD; the court denied the motion on April 6, 1995. However, appellant's counsel asked the court to reconsider the motion to dismiss and to conduct a hearing on the issue of whether the IAD had been violated. On April 28, 1995, the court

1. In calculating the passage of more than 180 days, Hardin Circuit Court apparently began its computation with April 21, 1994—the date on which the appellant requested return to Kentucky. It failed to consider the applicability of the September 20, 1994, request by the Hardin County Attorney. Had that later date been used, the prosecution in Hardin County would have occurred well within the mandatory 120-day limit involved when a request for return is initiated by the Commonwealth. Prosecution would have been timely and not subject to dismissal.

conducted a hearing on the matter. On May 17, 1995, the court once again denied the appellant's to motion to dismiss the charges.

On October 11, 1995, the appellant filed a *pro se* motion to dismiss the charges for lack of prosecution. In the motion, he argued that the Commonwealth had failed to bring him to trial within 120 days of his return to Fayette County as required by the IAD. On October 13, 1995, the court conducted a hearing and determined that the IAD had not been violated. On October 16, 1995, in accordance with a plea agreement, the appellant entered a conditional plea of guilty to escape in the second degree and perjury in the first degree; the court dismissed the PFO charge. On November 17, 1995, the court sentenced the appellant to five years' imprisonment for escape and to one year imprisonment for perjury with the two sentences to run concurrently as to each other. On December 5, 1995, the court ordered the appellant to serve his concurrent sentences for escape and perjury consecutively with any other sentence that the appellant is serving. The appeal in case # 95–CA–3291 followed.

In his first appeal, the appellant alleges that he was denied effective assistance of counsel. He contends that his attorney failed to raise the meritorious defense that the 180–day time limit set forth in the IAD had been violated. The appellant argues that in failing to bring him to trial within the specified time period, the court lost jurisdiction of the case and was required to dismiss the charges. The validity of the appellant's allegation of ineffective assistance of counsel is dependent upon whether or not the IAD time limit was violated.

In his second appeal, the appellant first argues that the court violated the 180–day time period set forth in the IAD. Again, he contends that as a result of the IAD violation, the court lost jurisdiction over the case and was required to dismiss the charges of escape and perjury. The appellant also claims that the Commonwealth did not comply with the 120–day time period set forth in the IAD.

The IAD sets forth two separate time frames within which a defendant must be tried. One pertains to action initiated by the detainee himself; and the second arises from action taken by the prosecutor. KRS 440.450 Article III sets forth the procedure when action is *initiated by the detainee*. If a detainer has been lodged against a person who has already "entered upon a term of imprisonment in a penal or correctional institution," he can make a request for disposition of the pending charge. KRS 440.450 Article III. Once a prisoner makes a request for final disposition, the IAD requires that the prisoner be brought to trial *within one hundred eighty (180) days* "after he shall have caused to be delivered to the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition." KRS 440.450 Article III.

■ KRS 440.450 Article IV sets forth the calculation of time *when a prosecutor activates* the IAD process. If the prosecutor from the jurisdiction filing the detainer requests temporary custody of the prisoner, then the "trial shall be commenced within *one hundred twenty (120) days of the arrival of the prisoner* in the receiving state...." (Emphasis added), KRS 440.450 Article IV. If the court fails to bring the prisoner to trial within the applicable time period, it loses jurisdiction of the case and must dismiss it with prejudice. *Spivey v. Jackson,* Ky., 602 S.W.2d 158 (1980).

In the cases *sub judice*, we must determine when the time frame set forth in Article III was triggered and whether it was violated. The appellant contends that the 180–day time period is triggered when the inmate *files* his IAD request as opposed to when the state seeking custody *receives* the inmate's request. Thus, he argues that the 180–day time period was activated when the appellant turned his IAD request over to the Ohio prison officials—regardless of the fact that the Commonwealth Attorney in Fayette County *never received* his request.

In support of his contention that the clock started to run when he filed his request for disposition, the appellant relies heavily upon *Lovitt v. Commonwealth,* Ky., 592 S.W.2d 133 (1980). In *Lovitt, supra,* the Supreme Court of Kentucky addressed the issue of when the 180–day time period is triggered,

adopting the reasoning of the Delaware Supreme Court in *Pittman v. State*, 301 A.2d 509 (1973), whose holding supports appellant's argument. Our Supreme Court held that a prisoner had done all that was required of him under IAD when he turned his request over to the prison official who had custody of him. In *Pittman, supra* at 513, the Delaware Supreme Court reasoned:

> [T]he legislature has placed one, and only one burden on the prisoner, that is, to ask the prison official who has custody over him to prepare and send the forms to the jurisdiction from which a detainer is lodged against him. The prisoner is not required to determine whether the foreign state is under the Act; nor is he required to police the correction official to establish that the official performs his statutory duties; nor is he bound to make sure that the form of his request complies with the technical and procedural requirements of the IAD.

■ However, the United States Supreme Court addressed this same issue more recently in *Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993), impliedly overruling *Lovitt* by holding that the 180-day time period in Article III of the IAD did not commence until the prisoner's request for final disposition of the charges against him *had actually been delivered* to the court or prosecuting officer of the jurisdiction that lodged the detainer against him.

■ Nonetheless, the appellant argues that *Lovitt* remains controlling. He contends that the United States Supreme Court only establishes minimum standards for constitutional guarantees and that, therefore, the states are free to adopt more restrictive protections for its residents[2]. It is beyond cavil that "[w]hen [the United States Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law...." *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). As the issues presented on appeal involve the interpretation of the IAD, which is a matter of federal law, we are bound

under the pre-emption doctrine (United States Constitution Article VI) to follow the rule set forth in *Fex, supra*.

■ In the cases *sub judice*, the Commonwealth Attorney of Fayette County did not receive the appellant's IAD request. Consequently, the 180-day time period was never triggered. The time period set forth in Article III of the IAD was not violated, and the Court did not lose jurisdiction over the cases. Therefore, the court was not required to dismiss any of the charges against the appellant. Having determined that the IAD was not violated, we find that the appellant's claim for ineffective assistance of counsel must also fail.

We now turn our attention to the issue of whether the 120-day time period set forth in Article IV of the IAD was violated. The appellant contends that the Commonwealth was required to bring him to trial by May 17, 1995. Due to the Commonwealth's failure to meet this deadline, the appellant asserts that the court lost jurisdiction and was required to dismiss the charges of escape and perjury. We disagree.

■ As we have already discussed, Article IV requires that a prisoner be brought to trial within 120 days of the prisoner's arrival in the receiving state. However, the court may grant "for good cause" any necessary or reasonable continuance. Moreover, in *United States v. Eaddy*, 595 F.2d 341, 344 (6th Cir.1979), the 6th Circuit Court held that if "a prisoner is aware of and understands the provisions of [the IAD], as well as his rights thereunder, a prisoner can waive those rights, so long as the waiver is voluntary." A person may also waive his IAD rights—even though he is not aware of those rights— "where there is an affirmative request to be treated in a manner contrary to procedures." *Id.* at 344.

■ In the case at bar, the appellant's delay in being brought to trial was attributable in part to the appellant himself. At the request of appellant's counsel, the court rescheduled the appellant's status hearing to give counsel time to prepare a motion to

---

**2.** Regardless of the pre-emption doctrine, the logic of this argument is deficient since the Kentucky rule of *Lovitt* is *less* restrictive than the federal standard enumerated in *Fex, supra*.

dismiss. The hearing on the motion to dismiss was re-scheduled several times to allow the Commonwealth the opportunity to review the appellant's motion and the IAD request forms which the appellant introduced into record. After the court denied his motion to dismiss, the appellant filed a motion for reconsideration and asked the court for hearing on the matter. That motion was granted. Significantly, the appellant did not raise any concerns or objections to the delays occasioned by his own motions. We find that under these circumstances the 120–day time period of the IAD was not violated and that the disposition of the escape and perjury charges against the appellant was necessarily delayed for good cause.

In summary, we find that the 180–day time limit was not violated and that the court did not lose jurisdiction over the appellant. Therefore, we affirm the Fayette Circuit Court judgments in case # 95–CA–2220 and in case # 95–CA–3291.

All concur.