544 S.E.2d 52

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Keith SOMERLOT, Defendant Below, Appellant.**

No. 27907.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 28, 2000.

Decided Dec. 12, 2000.

Concurring Opinion of Justice Starcher Jan. 5, 2001.

Stephen S. Fitz, Fairmont, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, West Virginia, Attorneys for Appellee.

SCOTT, Justice:

This case is before the Court upon the appeal of Keith A. Somerlot from the December 30, 1999, sentencing order of the Circuit Court of Preston County, West Virginia, wherein the Appellant was sentenced to an indeterminate term of one to five years. The lower court then suspended the sentence and placed the Appellant on probation for three years. The sentence was entered subsequent to the Appellant's conditional guilty plea to the charge of conspiracy to commit a felony. The issue reserved in the conditional plea involved the lower court's denial of the Appellant's motion to dismiss the indictment. The Appellant maintains that the trial court should have dismissed the indictment against

him because the Appellee, the State of West Virginia, failed to try the Appellant within 180 days from the date on which the Prosecuting Attorney of Preston County received the Appellant's request for disposition of the charges against him sent pursuant to the Interstate Agreement on Detainers Act ("IADA"). *See* W.Va.Code §§ 62–14–1 to –7 (2000). Based upon a review of the facts, the parties' briefs and all other matters submitted before this Court, we affirm the lower court's decision.

## I. FACTS

On December 12, 1996, the Preston County Sheriff's Department filed a criminal complaint in the Magistrate Court of Preston County alleging that the Appellant committed a burglary in Preston County on or about June 27, 1996. Based upon this complaint, the magistrate issued an arrest warrant for the Appellant. On December 27, 1996, the Appellant began serving a two-year prison term in the Marion Correctional Institution in Ohio for charges relating to burglary, forgery and theft.

On October 1, 1997, the Preston County Sheriff's Department faxed the arrest warrant and complaint issued in Preston County to the Marion Correctional Institution. The sheriff's department also requested notification of the Appellant's release. It is uncontroverted that this act constituted the filing of a detainer against the Appellant. *See* W.Va.Code §§ 62–14–1 to –7.

On October 8, 1997, the Appellant signed a form entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints." The Appellant's account at the prison was debited in the amount of $2.87 for the certified mailing of one of the Appellant's request for disposition.[1] The parties stipulated below that the Ohio prison officials then sent a copy of the signed request by certified mail to the Prosecuting Attorney of Preston County and that it was received on October 14, 1997. The prison officials, however, ne-

---

1. According to the trial court's opinion letter, dated September 10, 1999, the amount deducted from the Appellant's account was the charge for

mailing one letter by certified mail, return receipt requested.

glected to send the same signed request to the Preston County Circuit Clerk's Office, despite the fact that the form itself designates one copy for this express purpose.

■ On February 10, 1999, the Marion Correctional Institution released the Appellant to the custody of the Preston County Sheriff's Department, pursuant to the outstanding detainer which had been filed some sixteen months earlier. The Appellant was indicted on June 1, 1999, for the acts alleged in the complaint that was filed against him on December 12, 1996. The Appellant filed a motion to dismiss the indictment one week later, raising the specific IADA issue which is currently before this Court on appeal. The lower court, relying upon the United States Supreme Court's decision in *Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993),[2] denied the Appellant's motion to dismiss, stating that

> the defendant, Mr. Somerlot, has not caused his request for final disposition to be actually delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction as required under Article III of the Agreement on Detainers. This is in accord with the *Flex* [sic] decision to the effect that the 180 day time period under the Agreement on Detainers "does not commence until the prisoner's request for final disposition of the charges against him has *actually* been *delivered* to the Court *and* the prosecuting officer of the jurisdiction that the [sic] lodged the detainer against him." *Flex* [sic] at page 1091. [Emphasis added]. While Article IX of the Agreement on Detainers (W.Va.Code § 62–14–1) states that the agreement is to be liberally construed so as to effectuate its purposes the Court finds and concludes that the defendant was required to strictly comply with the requirements of Article III which require that notice to the prosecuting officer *and* appropriate court be actually received.

The defendant had the ability to determine whether his requests had been properly mailed (i.e. by the debiting of his prison account for *two* certified mailings not one and by the return receipt cards for the mailing of his requests or by contacting the Court itself). The burden of "causing" the notices to be properly delivered was the defendant's.

It is this ruling which forms the basis for the present appeal.

## II. ISSUE

The issue before the Court of whether the Appellee was required to try the Appellant within the 180 day time limit prescribed by the IADA, notwithstanding the failure of the Ohio prison authorities to send the Appellant's request for final disposition to the Circuit Court of Preston County, is one of first impression. The Appellant argues that the lower court, by failing to dismiss the indictment, improperly placed the burden on the Appellant to send the request despite the language in Article III of West Virginia Code § 62–14–1, which directly places the burden on an official of the facility having custody of the Appellant to send out the Appellant's notice and request for final disposition. In other words, the Appellant argues that as long as he substantially complies with the provisions of the IADA, the burden should then shift to the state to bring him to trial within 180 days. The Appellant also argues that the lower court incorrectly ruled that the Appellant must strictly comply with the requirements of Article III of the IADA. In contrast, the Appellee maintains that the lower court was correct in ruling that actual delivery of the request for disposition to the prosecuting officer and the court of the jurisdiction that lodged the detainer against the Appellant must occur before the 180–day time limit commences.

---

**2.** We are disturbed about the fact that both the Appellant's petition for appeal and the Appellant's brief filed with this Court are completely devoid of any discussion of the United States Supreme Court's *Fex* decision. The omission of such an important case which was specifically relied upon by the lower court in its decision could be construed by this Court to be a misrepresentation of the relevant law. It is the duty of attorneys submitting legal memoranda to this Court to be honest and forthright in the representations that are made regarding the law pertinent to the resolution of the legal issues presented.

## III. STANDARD OF REVIEW

 The Appellant seeks review of the lower court's interpretation of the IADA. "To the extent this issue presents purely a question of law and statutory interpretation, our review is plenary and de novo." *State v. Smith*, 198 W.Va. 702, 707, 482 S.E.2d 687, 692 (1996). Additionally, in *State ex rel. Modie v. Hill*, 191 W.Va. 100, 443 S.E.2d 257 (1994), we recognized that "the Agreement on Detainers, *W.Va.Code*, 62–14–1, *et seq.*, [i]s an interstate compact to which the State is a party by statutory enactment." 191 W.Va. at 102, 443 S.E.2d at 259. As the United States Supreme Court has stated, "[t]he Agreement is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art.I, § 10, cl. 3, and thus is a federal law subject to federal construction." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985).[3]

## IV. DISCUSSION

We begin by examining the salient provisions of the IADA. Specifically, Article III of West Virginia Code § 62–14–1, provides, in pertinent part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, superintendent or other official having custody of him, who shall promptly forward it

---

3. *See United States v. Paredes–Batista*, 140 F.3d 367, 372 n. 9 (2d Cir.)(stating that the IADA "comes within the Compact Clause of the U.S. Constitution, art. I, § 10, cl. 3 ... and is thus a federal law subject to federal interpretation"), *cert. denied*, 525 U.S. 859, 119 S.Ct. 143, 142 L.Ed.2d 116 (1998); *Birdwell v. Skeen*, 983 F.2d 1332, 1336 (5th Cir.1993) (stating that "[t]he IADA is a congressionally sanctioned compact, so its interpretation is a question of federal law ... [and] the Court must use Federal, not Texas, rules to interpret the Agreement") (citation omitted); *Pinto v. Warden*, 1999 WL 49378 at *5 (Conn.Super.Ct.1999) (stating that "[b]ecause the IAD is an interstate compact that the federal Congress has sanctioned, we must interpret its provisions in accordance with federal law[;]" but, "[i]n searching for the applicable federal law, we may, however, look to relevant decisions in both federal and state courts") (citations omitted); *State v. Schmidt*, 84 Hawai'i 191, 932 P.2d 328, 333 (Ct.App.1997) (stating that "[t]he IAD ... is a federal law subject to federal court construction" and "the United States Supreme Court's construction of article III(a) in *Fex* is controlling"); *Wright v. Commonwealth*, 953 S.W.2d 611, 615 (Ky.Ct.App.1997) (recognizing that "the interpretation of the IAD ... is a matter of federal law" and stating that "we are bound under the pre-emption doctrine (United States Constitution Article VI) to follow the rule set forth in *Fex* "); *Commonwealth v. Flores*, 1998 WL 792466 at *3 (Mass.Super.Ct.1998) (stating that the construction of the IADA "presents a question of federal law" and "the Supreme Court is the controlling authority on the interpretation of the provisions of the IAD"); *State v. Wells*, 110 Ohio App.3d 275, 673 N.E.2d 1008, 1011–12 n. 1 (1996) (recognizing that "IAD is a congressionally sanctioned interstate compact" and "its interpretation presents a question of federal law"), *dismissed, appeal not allowed by*, 77 Ohio St.3d 1413, 670 N.E.2d 1002 (1996); *but see Johnson v. People*, 939 P.2d 817, 821 (Colo.1997) (stating that "[a]s a compact, the IAD is both state and federal law, and federal decisions are instructive regarding the interpretation of its terms") (citation omitted).

**together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.**

*Id.* (emphasis added). Further, Article V(c) of West Virginia Code § 62–14–1 provides:

If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

*Id.*

We have previously addressed the IADA in prior decisions such as *Modie.* *See* 191 W.Va. at 100, 443 S.E.2d at 257. In that case, an inmate accused of a crime sought a writ of prohibition seeking to prohibit the circuit court from conducting further criminal proceedings against him in view of the delay between his request for disposition and trial. *Id.* The inmate actually served the county circuit court clerk and the prosecuting attorney with his request for final disposition pursuant to the terms of the IADA. *Id.* at 101, 443 S.E.2d at 258. The inmate, however, after sending his request was transferred by the Ohio Department of Corrections to a different correctional facility within the state. The lower court found that this transfer, as well as the inmate's failure to submit an amended notice of transfer, vitiated his request for final disposition. *Id.* at 102, 443 S.E.2d at 259. In other words, the lower court found that the inmate's failure to give proper notice of his place of incarceration precluded activation of the 180–day time limit afforded by the IADA. *Id.*

██ We disagreed with the lower court's decision in *Modie* and issued the requested writ, holding that

[t]he failure of the State to bring the accused to trial within 180 days following the State's receipt of the petitioner's notice of imprisonment and request for final disposition of the case, pursuant to the Agreement on Detainers, *W.Va.Code,* 62–14–1, article III(a) and article V(c) [1971], mandates the dismissal of the indictments pending against the petitioner, where there was no motion for continuance made by the State and the delay was not reasonable or necessary.

191 W.Va. at 101, 443 S.E.2d at 258, syllabus. While this Court indicated in the syllabus of *Modie* that the petitioner's notice of imprisonment and request for final disposition must be "pursuant to the Agreement on Detainers[,]" the Court was not presented with the issue sub judice of whether the inmate must substantially comply with the requirements of the IADA or strictly comply with those requirements.

Because resolution of the issue presents a federal question subject to federal construction and interpretation, we begin by examining the pertinent federal law.[4] Most significantly, in *Fex,* a prisoner in Indiana was brought to trial in Michigan 196 days after he gave a request for final disposition to the Indiana prison officials and 177 days after the request for final disposition was received by the Michigan prosecuting attorney and the court.[5] 507 U.S. at 46, 113 S.Ct. 1085. The prisoner moved for a dismissal of the charges pursuant to Article V(c) of the IADA, on the ground that his trial did not begin until after the 180 day time limit set forth in Article III(a) had passed. *Id.* The United States Supreme Court indicated that the outcome of the *Fex* case turned on the meaning of the phrase in Article III(a), " 'within one hundred and eighty days after he shall have caused to be delivered.' " 507 U.S. at 47, 113 S.Ct. 1085. Specifically, the Supreme Court had to decide whether the phrase refers to "(1) the time at which petitioner transmitted his notice and request ... to the Indiana correctional authorities; or

---

4. *See supra* note 3.

5. It is clear in *Fex* that the inmate's request for final disposition was sent to and received by both the prosecuting attorney and the circuit court. *See* 507 U.S. at 46, 113 S.Ct. 1085.

rather (2) the time at which the Michigan prosecutor and court ... received that request." *Id.*

The Supreme Court, in resolving the *Fex* case, adopted the reasoning of the State of Michigan that "no one can have 'caused something to be delivered' unless delivery in facts occurs[,]" finding this proposition "self-evidently true." *Id.* In so doing, the Supreme Court rejected the inmate's policy argument that

> "[f]airness requires the burden of compliance with the requirements of the IAD to be placed entirely on the law enforcement officials involved, since the prisoner has little ability to enforce compliance," ... and that any other approach would "frustrate the higher purpose" of the IAD, leaving "neither a legal nor a practical limit on the length of time prison authorities could delay forwarding a [request]."

*Id.* at 52, 113 S.Ct. 1085 (quoting petitioner's brief). Specifically, the Supreme Court stated that

> [t]hese arguments, however, assume the availability of a reading that would give effect to a request that is never delivered *at all....* As we have observed, the textual requirement "shall have caused to be delivered" is simply not susceptible of such a reading. Petitioner's "fairness" and "higher purpose" arguments are, in other words, more appropriately addressed to the legislatures of the contracting States, which adopted the IAD's text.

*Id.* Of great import to the instant case, the Supreme Court held that "the 180–day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him *has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.*" 507 U.S. at 52, 113 S.Ct. 1085. (emphasis added).

Other jurisdictions have followed the holding of *Fex* and have held that prisoners attempting to invoke the provisions of Article III(a) of the IADA must strictly comply with those provisions and cause their requests for final disposition of the charges against them to be actually delivered on both the prosecuting attorney and the court of the jurisdiction

issuing the detainer before the 180–day time limit commences to run. *See United States v. Bell*, 1998 WL 911705 at *3 (4th Cir.1998) (following *Fex* and rejecting petitioner's argument that he satisfied IADA requirements when he delivered notice to prison warden whom petitioner asserted was statutory agent of court), *cert. denied*, 528 U.S. 826, 120 S.Ct. 77, 145 L.Ed.2d 65 (1999); *United States v. Paredes–Batista*, 140 F.3d 367, 374 (2d Cir.) (following *Fex* and explaining that "[t]he Supreme Court has stated unequivocally that the IAD is to be read literally"), *cert. denied*, 525 U.S. 859, 119 S.Ct. 143, 142 L.Ed.2d 116 (1998); *United States v. Dent*, 149 F.3d 180, 186 (3d Cir.1998) (stating that "invocation of Article III's 180–day time limit generally requires strict compliance with the Article's requirements"), *cert. denied*, 525 U.S. 1085, 119 S.Ct. 833, 142 L.Ed.2d 689 (1999); *United States v. Collins*, 90 F.3d 1420, 1426 (9th Cir.1996) (stating that "*Fex* instructs us that the IADA means what it says. And when it says that the prisoner must have his demand 'delivered to the ... appropriate court,' that is what it means."); *Nichols v. State*, 651 So.2d 76, 77–78 (Ala. Crim.App.1994) (upholding lower court's refusal to dismiss indictment because record was devoid of evidence that court or prosecution received notice of request for final disposition); *Johnson v. People*, 939 P.2d 817, 820–21 (Colo.1997) (requiring strict compliance with IAD's procedural step that "the custodial official must forward the prisoner's request for a final disposition and a certification containing information regarding the prisoner's incarceration to the appropriate court and the prosecuting officer"); *Pinto v. Warden*, 1999 WL 49378 at *7 (Conn.Super.Ct.1999) (stating that "[w]hile it is true that earlier decisions of courts were split on when the 180 day period begins, the majority of courts ... have held that the period begins to run once the request is actually received by the appropriate court and prosecutor"); *Fields v. United States*, 698 A.2d 485, 489–90 (D.C.1997) (rejecting prisoner's substantial compliance argument and recognizing that court is bound by *Fex*), *cert. denied*, 523 U.S. 1012, 118 S.Ct. 1203, 140 L.Ed.2d 331 (1998); *Clater v. State*, 266 Ga. 511, 467

S.E.2d 537, 539 (1996) (stating that "[a]ccording to the clear wording of Article III(a), the right of a prisoner to be tried within 180 days accrues only after the precise operational procedures set forth in the IAD are completely satisfied. It is incumbent upon the prisoner to initiate these procedures, and the Court of Appeals has previously indicated that the notice provisions of Article III(b) must be strictly complied with.") (footnote omitted); *State v. Schmidt,* 84 Hawai'i 191, 932 P.2d 328, 332 (Ct.App.1997) (following *Fex* in requiring strict compliance with IADA); *State v. Greenwood,* 665 N.E.2d 579, 581–82 (Ind.1996) (requiring strict compliance with IADA procedures and recognizing that procedures are "not mere technicalities"); *Wright v. Commonwealth,* 953 S.W.2d 611, 615 (Ky.Ct.App.1997) (applying *Fex* and determining that because the commonwealth's attorney did not receive IAD request 180–day time period was never triggered); *State v. Fair,* 672 A.2d 590, 591 n. 4 (Me.1996) (rejecting prisoner's substantial compliance argument); *Commonwealth v. Flores,* 1998 WL 792466 at *3 (Mass.Super.Ct.1998) (holding that "IAD as construed by *Fex* requires that a prisoner must be tried within 180 days of the date when his request for disposition is actually received by the state in which the charges are pending, not when the prisoner provides that request to his custodial authorities"); *State v. Nearhood,* 2 Neb.App. 915, 518 N.W.2d 165, 169 (1994) (upholding lower court's refusal to dismiss indictment where prisoner failed to file his request for final disposition in manner required by IADA and specifically expressing that "[b]y its terms, article III, § (a), requires that notice requesting final disposition be made to the prosecuting attorney and the appropriate court"); *McNelton v. State,* 990 P.2d 1263, 1274–75 (Nev.1999) (recognizing that under *Fex,* prisoner's request for final disposition requires actual delivery to

court and prosecuting officer of jurisdiction that lodged detainer against him); *People v. Morris,* 160 Misc.2d 648, 610 N.Y.S.2d 725, 727 (N.Y.Co.Ct.1994) (following *Fex* and recognizing that 180–day period "is measured from the date of actual delivery of the prisoner's request to the appropriate court and prosecuting authorities of the Receiving State"); *State v. Treece,* 129 N.C.App. 93, 497 S.E.2d 124, 125 (1998) (following *Fex* and holding that "this language [of *Fex* ] cannot be interpreted as requiring the district attorney to inquire as to whether a defendant has mailed written notice of his request for final disposition of his case"), *appeal dismissed, review denied,* 348 N.C. 290, 501 S.E.2d 924 (1998); *State v. Moe,* 581 N.W.2d 468, 472 (N.D.1998) (concluding that because the inmate's second request was never forwarded to North Dakota officials by Colorado officials, 180–day period under IADA never commenced); *Morganfield v. State,* 919 S.W.2d 731, 734 (Tex.Ct.App.1996) (recognizing that " '[t]he inmate bears the burden of demonstrating compliance with the formal procedural requirements of Article III' " and finding that prisoner failed to carry burden because there was no proof as to when trial court and prosecuting attorney received request for final disposition); *Crosland v. State,* 857 P.2d 943, 946 (Utah 1993) (rejecting petitioner's substantial compliance argument and concluding that 180–day time limit did not commence until Utah authorities actually received request); *Yiaadey v. Commonwealth,* 29 Va.App. 534, 513 S.E.2d 446, 450 (1999) (stating that "[u]nder Virginia law, a prisoner must strictly comply with the procedure established in Article III for requesting final disposition of an untried indictment").[6]

We readily reject the authority cited by the Appellant as each of these cases were decided prior to *Fex.*[7] Moreover, a closer

---

**6.** There are a few jurisdictions that still adhere to the substantial compliance theory. *See e.g., Palmer v. Williams,* 120 N.M. 63, 897 P.2d 1111, 1113–15 (1995) (adhering to " 'substantial compliance with the IAD's requirement that certain documents be filed with the proper authorities in the receiving state,' " but doing so with no discussion of *Fex*); *see also State v. Morris,* 74 Wash.App. 293, 873 P.2d 561, 565 (1994) (refusing to follow *Fex* in interpreting state law regard-

ing intrastate detainers and holding that "once the inmate delivers his request to the warden, he has done what the statute obligates him to do to cause it to be delivered"), *aff'd,* 126 Wash.2d 306, 892 P.2d 734 (1995).

**7.** The Appellant relies upon the following cases as support for his "substantial compliance" argument. *See Pittman v. State,* 301 A.2d 509 (Del. 1973); *State v. Ferguson,* 41 Ohio App.3d 306,

examination of the jurisprudence in each of these jurisdictions reveals that each jurisdiction now follows the doctrine of strict compliance regarding the procedural requirements of the IADA as pronounced in the *Fex* decision. *See State v. Davis*, 1993 WL 138993 at *4 (Del.Super.Ct.1993) (recognizing that General Assembly amended 11 Delaware Code § 2542(g) in 1981 to require that written notice pursuant to IAD "meant actual receipt of notice by the State and the Court"); *State v. Wells*, 110 Ohio App.3d 275, 673 N.E.2d 1008, 1012 (1996) (stating that "we find *Fex* to be persuasive authority that constructive delivery is insufficient to trigger the one-hundred-eighty-day period in Article III(a) of the IAD ... [and] reject[ing] appellant's 'substantial compliance' argument, which relies upon *State v. Ferguson* (1987), 41 Ohio App.3d 306, 535 N.E.2d 708"); *State v. Burss*, 316 Or. 1, 848 P.2d 596, 598 (1993) (following *Fex*'s holding that " 'the 180–day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer' "); *Clark v. State*, 1993 WL 188052 at *7 (Tenn.Crim.App.1993) (following *Fex* and reiterating prior Tennessee Supreme Court holding that " '[t]he prisoner has responsibility for giving notice to the receiving state of his or her request under Article III. If this task is entrusted to officials of the sending state, the responsibility and burden are still on the prisoner' ") (quoting *State v. Moore*, 774 S.W.2d 590, 594 (Tenn.1989)).

▪ Consistent with the decision of the United States Supreme Court in *Fex*, as well as the majority of other jurisdictions which have addressed the issue sub judice, we agree that a prisoner must strictly comply with the procedures set forth in the IADA before the 180–day time limit is triggered. Accordingly, we hold that the 180–day time period set forth in Article III(a) of the IADA, West Virginia Code §§ 62–14–1 to –7, does not commence until the prisoner's request for final disposition of the charges against him

has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him. *See Fex*, 507 U.S. at 52, 113 S.Ct. 1085.

▪ As previously mentioned, in the instant case, it is undisputed that the Ohio correctional facility sent the Appellant's request for final disposition to the Prosecuting Attorney of Preston County. This request, however, was never sent to the trial court or circuit clerk's office in that county. At least two other jurisdictions which were presented with facts analogous to the instant case have concluded that under *Fex*, the 180–day time period was not triggered until both the prosecuting authority **and** the court actually received the notice of the prisoner's request for final disposition. In *Paredes–Batista*, the inmate requested a speedy trial pursuant to the provisions of the IADA on or about July 21, 1994. Almost a year later, on June 9, 1995, the inmate filed a motion to dismiss the indictment citing, as one reason, the government's failure to try him within 180 days after notice of his request for final disposition. 140 F.3d at 373. The inmate followed the procedures established by the U.S. Marshals' office for requesting a final disposition. After executing the proper form, the inmate returned the form to the prison officials who, in turn, forwarded the request to the U.S. Marshals' office. *Id.* Under its regular practice, the U.S. Marshals' office, upon receipt of the form, should have forwarded it to the U.S. Attorney's office and also to the district court. In *Paredes–Batista*, for reasons left unexplained, the inmate's request for final disposition was never forwarded to either the U.S. Attorney or the district court. *Id.* In fact, delivery of the inmate's request did not occur until April, 21, 1995, at a pre-trial conference. *Id.* Under these facts, the United States Court of Appeals for Second Circuit Court upheld the lower court's refusal to dismiss the indictment, stating that "[t]he plain language of the IAD provides that a prisoner who is the subject of a detainer must be tried within 180 days after he causes his speedy trial request to be delivered to the

535 N.E.2d 708 (1987); *State v. Arwood*, 46 Or. App. 653, 612 P.2d 763 (1980); *Nelms v. State*,

532 S.W.2d 923 (Tenn.1976).

court and the prosecutor whose office filed the detainer." *Id.* at 374. The court further concluded that

> [e]ven if we were to accept *arguendo* that delivery of the request to the U.S. Marshals' office in the Southern District of New York in September 1994 was sufficient under a theory of agency to constitute delivery to the "prosecuting officer" (the U.S. Attorney of the Southern District), as Batista [the inmate] urges, that request did not become effective and start the 180–day clock until it was *also* delivered to the district court—an event that did not occur until April 21, 1995.

*Id.* Finally, the court emphasized: "The Supreme Court has made clear that this actual delivery rule is not to be trumped by 'fairness' arguments." *Id.* at 375 (citing *Fex*, 507 U.S. at 51–52, 113 S.Ct. 1085).

Similarly, in *Collins*, the inmate argued that the district court should have dismissed his indictment because he was not brought to trial within the 180–day period set forth in the IADA. 90 F.3d at 1424. The U.S. Marshall had received a copy of the inmate's request for a speedy trial on May 6, 1994. The Marshal filed a copy of this demand with the district court on May 10, 1994. The inmate argued that the 180–day time period commenced on May 6, 1994, the day the U.S. Marshals' office received his request. *Id.* at 1426. The United States Court of Appeals for the Ninth Circuit rejected the inmate's argument in *Collins*, holding that delivery of the IADA speedy trial request to the U.S. Marshals' office did not constitute delivery to district court "because the Marshals are not agents for the court for purposes of accepting every request they find thrust upon them." *Id.* Rather, the court specifically found that the 180–day "clock would start when the court and prosecuting attorney received the notice." *Id.* (citing *Fex*, 507 U.S. at 46–51, 113 S.Ct. 1085.) The court went on to find that the district court did not receive the inmate's request until May 10, 1994, and, therefore, it was that date which triggered the 180–day clock. 90 F.3d at 1426.

Accordingly, under our holding today, the trial court correctly refused to dismiss the indictment against the Appellant. The 180– day time period was never triggered because the Appellant failed to carry his burden of making sure that his request for final disposition was actually delivered to the Circuit Court of Preston County. The Appellant could easily have gleaned that his request was not sent by the prison officials to the circuit court by virtue of the fact that his prison account was only debited for one certified mailing of his request. Additionally, the Appellant could have questioned why he never received a return receipt from the circuit court. Lastly, the Appellant could have telephoned the circuit court to ascertain whether his request had been received. The Appellant, however, took no further action in order to meet the burden of actually delivery of his request that is imposed upon him by the IADA.

Based on the forgoing, the lower court's decision is hereby affirmed.

Affirmed.

STARCHER, Justice, concurring:

(Filed Jan. 5, 2001)

I concur with the result in the majority opinion, because any delay in delivering the petitioner's request for final disposition of the charges against him was accidental, and because any prejudice to the petitioner was minimal.

However, in a case where a substantial delay was deliberate or where the effect of any delay was substantially prejudicial, the "strict compliance" rule cannot be solely determinative of a defendant's rights. The state may not break its own rules and procedures and thereby gain an unfair advantage against a criminal defendant.