Steve BRYANT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2005–SC–000194–TG.

Supreme Court of Kentucky.

Aug. 24, 2006.

Thomas M. Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Kevin Ricky Branscum, Assistant Attorney General, Office of Criminal Appeals, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice ROACH.

Appellant, Steve Bryant, entered a conditional guilty plea in the Caldwell Circuit Court to charges of first-degree robbery and first-degree assault. He was sentenced to ten years in prison for the robbery and eleven years for the assault. Appellant's sentences were to be served consecutively for a total of twenty-one years in prison. Pursuant to his conditional guilty plea, Appellant reserved the right to appeal the trial court's denial of his motion to dismiss. Specifically, he claims the charges against him should have been dismissed because he was not brought to trial within 180 days following his request for final disposition of his indictment in accordance with the Interstate Agreement on Detainers ("IAD"), KRS 440.450. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

## I. Background

On June 4, 2002, Appellant was indicted for a robbery and assault that had occurred in Caldwell County on December 12, 2001. Sometime after the occurrence of those crimes, Appellant was incarcerated in the Illinois River Correctional Center ("IRCC") in Canton, Illinois. On July 1, 2002, G.L. Ovey, the Caldwell County Commonwealth's Attorney, lodged a detainer against Appellant at IRCC based on the Kentucky indictment.

On or about July 16, 2002,[1] and pursuant to the IAD, IRCC's warden informed Appellant of the charges that were pending against him in Caldwell County. Appellant signed and returned to the warden Agreement on Detainers Forms I and II. Form I gave Appellant official notice of the Kentucky indictment; his signature on the document acknowledged that he had received notice. Form II contained Appellant's request for disposition of the Kentucky charges. IRCC staff sent two separate copies of Appellant's disposition request, along with other required forms, to Kentucky officials via certified mail. The first was sent to James S. Miller, the County Attorney for Caldwell County, and was signed for and received by Miller. The second was addressed to the Clerk of

---

1. There is some discrepancy as to whether Appellant was notified of the indictments pending against him on July 16 or July 18 because conflicting dates were listed on at least one of the forms signed by Appellant. Regardless, the difference between these dates is of no legal significance to Appellant's argument.

the Court, Caldwell County and was signed for and received by Betty Holt, a staff member in the office of the Caldwell County Judge Executive.

In February 2003, the Caldwell County Commonwealth's Attorney's office requested temporary custody of Appellant in order to bring him to trial on the robbery and assault charges. On April 30, 2003, Appellant was brought from IRCC to Caldwell County for the trial. He was arraigned in the Caldwell Circuit Court May 6, 2003 and was appointed a public defender. Trial was scheduled for August 26, 2003, which would have been 118 days from the date Appellant was transferred to the Commonwealth's custody.

On June 10, 2003, Appellant filed a motion to dismiss the charges pending against him because he had not been brought to trial within 180 days of his request for final disposition as required by the IAD. Included with Appellant's motion were the IAD Forms I and II he had executed almost a year earlier, in July 2002. The Commonwealth contested the motion to dismiss, arguing that Appellant had failed to give notice of his request for disposition to the appropriate individuals as required by the IAD. The Commonwealth attached a fax from IRCC which showed certified mail receipts indicating delivery of Appellant's IAD paperwork to Miller and Holt, as noted above. Also included with the motion was an affidavit from JoAnn Newsom, the Clerk of the Caldwell County District and Circuit Courts, which stated that Appellant had not filed any request for disposition with either of the Caldwell Courts.

The trial court held a hearing on Appellant's motion to dismiss on July 1, 2003. Appellant introduced additional evidence at the hearing, including a letter from IRCC's Warden to County Attorney Miller describing the transfer process under the IAD and an affidavit from Holt describing the way misdirected mail was typically handled within the office of the Caldwell County Judge Executive. Appellant argued that any error in the delivery of his disposition request could be attributed to the staff at IRCC and that it would be unfair to impute that error to him. The Commonwealth argued that Appellant had failed to comply with the notice provisions of the IAD, specifically that he had not delivered his disposition request to either (1) the proper "prosecuting officer," in this case the Caldwell County Commonwealth's Attorney, Glycon L. Ovey, or (2) the "appropriate court of the prosecuting officer's jurisdiction," in this case the Caldwell Circuit Court.

The trial court reserved its ruling, allowing the parties five days to supplement the record regarding Appellant's assertion that the County Attorney's office had actually forwarded IAD correspondence concerning Appellant to the Commonwealth's Attorney's office. Despite the extra time, neither party offered any additional evidence and the trial court issued an order denying the motion to dismiss. Within the order the trial court noted that there was "no evidence that proper notice was given to the Commonwealth Attorney who is the appropriate prosecuting officer for this the appropriate Court of felony jurisdiction in Kentucky." After a motion by the Commonwealth, the trial court made additional findings of fact concerning Appellant's motion to dismiss. First, the trial court held that neither Appellant, nor anyone acting on his behalf, filed any IAD documents with the Caldwell County Circuit Court. Second, the trial court held that the office of the Caldwell County Judge Executive was not the appropriate office with which to file IAD paperwork because it did not "perform any judicial function or possess any judicial authority."

The case proceeded to trial as scheduled on August 26, 2003. The next day, after three hours of jury deliberations and despite two attempts to vote, the jury indicated that it had been unable to reach a verdict as to Appellant's guilt or innocence. The trial court then read the charge provided in RCr 9.57, commonly known as the *Allen* charge after *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and ordered the jury to continue deliberations. While the jury continued to deliberate, the parties entered into plea negotiations. Ultimately, they agreed that Appellant would enter a conditional guilty plea to the offenses of first-degree robbery and first-degree assault, reserving his right to appeal the trial court's denial of his motion to dismiss. In exchange, the Commonwealth's Attorney agreed to recommend a reduced sentence of 10 years for the robbery and 11 years for the assault, to be served consecutively. After his guilty plea, Appellant requested immediate sentencing and waived the presentence investigation report. The trial court sentenced Appellant, consistent with the Commonwealth's recommendation, to a total of 21 years imprisonment.

## II. Analysis

■ Appellant asks that his conviction be reversed on the grounds that the trial court improperly denied his motion to dismiss the charges against him. Specifically, he argues that the Commonwealth's failure to bring him to trial within 180 days of his request for a disposition of the indictment violated his rights under the IAD, which requires reversal in such cases. We disagree and affirm Appellant's conviction.

As detailed above, there is no dispute in the record that Appellant requested disposition of the charges pending against him in July 2002. Likewise, there is no dispute that IRCC staff failed to give notice of Appellant's disposition request to the appropriate officials as required by the IAD. The sole question presented in this case is whether, in light of these circumstances, the IAD required dismissal of the charges against Appellant since he was not brought to trial within 180 days of his request for a disposition of those charges under the statute.

The IAD clearly sets forth the time limits within which a defendant who is subject to the statute must be tried. The first paragraph of Article III of the IAD, KRS 440.450, provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . .

Paragraph three of Article V of the IAD also sets forth that dismissal is the required remedy when a defendant is not brought to trial within the prescribed period:

> If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appro-

priate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

Despite the clearly-stated time limits, there is arguably some ambiguity in the statutory language describing what is necessary to trigger the 180–day limit. The IAD states that a defendant "shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . ." KRS 440.450(Art. III)(1). Here, by informing the IRCC warden of his request for a final disposition of the Kentucky indictment, Appellant did all that was required of him under the IAD. At the same time, it is unquestioned that IRCC's staff failed to transmit Appellant's request to the appropriate parties, a function they are required to perform under the IAD.

The only Kentucky Supreme Court case to address this precise issue is *Lovitt v. Commonwealth*, 592 S.W.2d 133 (Ky.1980). Although the facts underlying that case are not clearly set out in the opinion, the Court reversed the conviction of a defendant, reasoning that he "did all that the statute required of him to secure a prompt trial as defined in the statute." *Id.* at 134. In reaching this decision, the Court adopted the reasoning of the Delaware Supreme Court which had stated in a similar case: "The burden of compliance with the procedural requirements of the IAD rests upon the party states and their agents; the prisoner, who is to benefit by this statute, is not to be held accountable for official administrative errors which deprive him of that benefit." *Pittman v. State*, 301 A.2d 509, 514 (Del.1973), *superseded by statute*, Del.Code Ann. tit. 11, § 2542(g).

■■ This is essentially the same position advanced by Appellant. In his reply brief Appellant quotes extensively from *Pittman* and states that its "reasoning was adopted by this Court in *Lovitt, supra,* and it stands as a statement of the law of this Commonwealth." But this argument ignores controlling case law on this subject, in particular, the United States Supreme Court's opinion in *Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993).[2] The Kentucky Court of Appeals acknowledged as much in *Wright v. Commonwealth*, 953 S.W.2d 611 (Ky.App.1997), wherein it noted that *Fex*

impliedly overrul[ed] *Lovitt* by holding that the 180–day time period in Article III of the IAD did not commence until

---

2. Although the IAD is enacted at KRS 440.450, it is nevertheless a federal law and is subject to federal construction under Article I, Section 10, Clause 3 of the United States Constitution (also known as the Compact Clause). *See Cuyler v. Adams*, 449 U.S. 433, 438–42, 101 S.Ct. 703, 706–09, 66 L.Ed.2d 641 (1981). "[W]here Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause." *Id.*

at 440, 101 S.Ct. 703. "In the case of the detainer agreement, Congress gave its consent in advance by enacting the Crime Control Consent Act of 1934...." *Id.* at 441, 101 S.Ct. 703. "Because this Act was intended to be a grant of consent under the Compact Clause and because the subject matter of the act is an appropriate subject for congressional legislation, we conclude that the Detainer Agreement is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Id.* at 441–42, 101 S.Ct. 703.

the prisoner's request for final disposition of the charges against him *had actually been delivered* to the court or prosecuting officer of the jurisdiction that had lodged the detainer against him.

*Wright*, 953 S.W.2d at 615. We agree with the Court of Appeals' analysis and note that our decision in *Lovitt* has been overruled to the extent that it would compel a different result than would the Supreme Court's opinion in *Fex*.

Although the facts of *Fex* are slightly different than in this case, the rule it announced nevertheless dictates the result in this case. In *Fex*, a detainer was filed by Michigan authorities against a prisoner in Indiana custody. On September 7, 1988, after being informed of the detainer, the prisoner requested disposition of the Michigan charges. On September 26, 1988, the prisoner's disposition request was delivered to the appropriate authorities in Michigan. After being transferred to Michigan custody, the prisoner was brought to trial on March 22, 1989, 177 days after his disposition request was received by Michigan authorities but 196 days after the prisoner had given the request to Indiana prison authorities. Predictably, the prisoner argued that his case should be dismissed under the IAD since he was not tried within 180 days of delivering his disposition request to Indiana prison officials. The Supreme Court summarized the issue:

> The outcome of the present case turns upon the meaning of the phrase, in Article III(a), "within one hundred and eighty days after he shall have caused to be delivered." The issue, specifically, is whether, within the factual context before us, that phrase refers to (1) the time at which petitioner transmitted his notice and request ... to the Indiana correctional authorities; or rather (2) the time at which the Michigan prosecutor and court ... received that request.

*Fex*, 507 U.S. at 47, 113 S.Ct. 1085.

Despite the key factual distinction between this case and *Fex*—that Appellant's request was never actually received by the appropriate authorities in Caldwell County whereas the prisoner's disposition request in *Fex* was received by both the prosecutor and the court—the Supreme Court's opinion clearly addresses the issue we are faced with here:

> [Michigan] argues that no one can have "caused something to be delivered" unless delivery in fact occurs. That is self-evidently true, and so we must reject petitioner's contention that a prisoner's transmittal of an IAD request to the prison authorities commences the 180-day period even if the request gets lost in the mail and is never delivered to the "receiving" State (*i.e.*, the State lodging the detainer, see Article II(c)).

*Id.* at 47–48, 113 S.Ct. 1085 (internal footnotes omitted). The Supreme Court went on to hold "that the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Id.* at 52, 113 S.Ct. 1085.

In light of this holding, Appellant's conviction and sentence must be affirmed. The trial court conducted a hearing on Appellant's motion to dismiss prior to trial and specifically found that his disposition request was never delivered to either the Caldwell County Commonwealth's Attorney or to the Caldwell Circuit Court. As such, the 180-day time limit imposed by the IAD never began to run because neither the prosecutor nor the court was ever informed of Appellant's request for disposition of the charges.

The judgment of the Caldwell Circuit Court is affirmed.

All concur.